David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
STEPHEN G.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN G.,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY; ARCH CAPITAL SERVICES, INC. WELFARE BENEFITS PLAN; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF STEPHEN G.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, STEPHEN G. herein sets forth the allegations of this Complaint against Defendants AETNA LIFE INSURANCE COMPANY; ARCH CAPITAL SERVICES, INC. WELFARE BENEFITS PLAN ("the Plan") and DOES 1 through 10.

**PRELIMINARY ALLEGATIONS**

**JURISDICTION**

1. Plaintiff brings this action for relief pursuant to Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), and (a)(3). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e), (f) and (g), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331

as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2.   This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

3.   Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendants' improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs; and equitable relief, including, *inter alia*, injunctions against applying a "Wilderness Treatment" exclusion for mental health treatment, applying acute criteria to sub-acute treatment, and limiting coverage to periods of time that fall below standards of care on the medical community and any other relief that may arise during the pendency of this action and that the Court may deem appropriate.

**PARTIES**

4.   Plaintiff is and at all times relevant was a resident of the State of California.

5.   At all relevant times, STEPHEN G. participated in an employee welfare benefit plan, ARCH CAPITAL SERVICES, INC. WELFARE BENEFITS PLAN, ("the Plan") within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by his employer, Defendant ARCH CAPITAL SERVICES, INC.

6.   At all relevant times, AETNA LIFE INSURANCE COMPANY ("Aetna") was and is a corporation whose primary place of business is located in the State of California.

7.   Mental Health claims under the Plan were at all relevant times administered by Aetna and/or its third-party designee.

8.   D.G. is STEPHEN G.'s daughter and a Plan beneficiary.

9.   At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff.  This action involves mental health claims denied by the Plan's claim administrator.

**COMPLAINT**                                                                                                    **CASE NO.**

**FACTS**

10. The Plan guarantees, warrants, and promises coverage for medically necessary health care services, care and treatment, including but not limited to: health care services, mental health care, and the treatment at issue herein.

11. At all relevant times D.G. was a beneficiary of the Plan, and the Plan was in full force and effect.

12. The Summary Plan Description defines Medically Necessary services as services as

> Health care services that a **provider** exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an **illness, injury**, disease or its symptoms, and that are:
> - In accordance with generally accepted standards of medical practice
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's **illness, injury** or disease
> - Not primarily for the convenience of the patient, **physician**, or other health care **provider**
> - Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's **illness, injury** or disease

13. The Plan contemplates treatment for participants and beneficiaries in a residential treatment center.

14. The Plan covers mental health expenses and services including "Inpatient room and board at the semi-private room rate, and other services and supplies related to your condition that are provided during your stay in a hospital, psychiatric hospital, or residential treatment facility."

15. California's Mental Health Parity Act, Health & Safety Code §1374.72, Insurance Code § 10144.5, and the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA")

specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

16. D.G. was diagnosed with, *inter alia,* bipolar disorder, history of self-harm and suicidal ideation, generalized anxiety disorder, attention-deficit hyperactivity disorder, and substance use disorder.

17. Around age thirteen, D.G. began having suicidal ideations, severe anxiety, and began abusing substances. She shoplifted daily, stealing alcohol and food.

18. Also around this age, unbeknownst to her parents, D.G. began to be sexually groomed and cyber-molested by an adult online.

19. Despite ongoing outpatient treatment, D.G.'s condition worsened. She failed to disclose her sexual abuse to her outpatient treatment providers. She suffered from hallucinations, voices, and crippling depression. She was placed on a 5150 hold and admitted to a psychiatric hospital.

20. By the age of seventeen, D.G. continued to self-harm daily, abuse drugs and alcohol, have sexual intercourse, and suffer from hallucinations until she eventually suffered a psychotic break and was treated in the emergency department, and then an inpatient psychiatric unit.

**A. Aetna's Wrongful Denials of D.G.'s Treatment at BlueFire Wilderness**

21. As a result of D.G.'s failed outpatient therapy and her ongoing suicidality and/or self-harm, her treating mental health providers unanimously recommended that D.G. be treated at a residential facility that offered 24/7 supervision and treatment. From the hospital, D.G. was admitted to the BlueFire Wilderness ("BlueFire").

22. At all times relevant, D.G.'s treatment at Blue Fire was medically necessary, based upon the reasoned medical opinions of D.G.'s mental health providers.

23. Plaintiff filed claims for mental health benefits with Defendants for D.G.'s treatment at BlueFire.

24. Aetna and/or Aetna's contracted utilization review service provider denied Plaintiff's claims for treatment at BlueFire.

25. Aetna's initial denials claimed that D.G. "did not meet inpatient criteria" and that the information Aetna had did "not support an acute inpatient stay."

26. Plaintiff timely appealed Aetna's claim denials.

27. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's appeal.

28. In denying Plaintiff's claim for care and treatment for D.G., Aetna and/ or its utilization review service provider used nonquantitative treatment limitations ("NQTL"s) on behavioral health benefits that do not also generally apply to medical and surgical benefits.

29. Aetna and/ or its utilization review service provider based its denial on a purported Plan exclusion of "wilderness treatment" while no comparable exclusion exists for skilled nursing facilities and other medical and surgical treatment.

30. The NQTLs Aetna used in denying Plaintiff's claims are unfair and biased against approving claims for mental health treatment such as are at issue herein, and are prohibited under the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA).

31. Plaintiff timely submitted a level two appeal.

32. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's level two appeal.

33. As a result, Plaintiff was forced to pay for D.G.'s care and treatment at BlueFire from his own personal funds.

34. Plaintiff has exhausted all administrative remedies regarding the denial of D.G.'s mental health benefits.

**B. Aetna's Wrongful Underpayments of D.G.'s Treatment at La Europa Academy**

35. Following D.G.'s treatment at BlueFire, at the recommendation of her treatment providers, she was admitted to La Europa Academy ("La Europa"), a residential treatment center.

36. At all times relevant, D.G.'s treatment at La Europa was medically necessary, based upon the reasoned medical opinions of her treaters.

37. At all times relevant, D.G.'s treatment at La Europa was a covered benefit under the Plan.

38. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for D.G.'s treatment at La Europa.

39. Aetna approved Plaintiff's claims, but processed Plaintiff's claims inconsistently and incorrectly. Aetna paid between 100% and 2.44% of the amount of Plaintiff's claims while failing to provide a reason for the deviation.

40. Plaintiff timely appealed Aetna's underpayments.

41. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's appeal.

42. Plaintiff timely submitted a level two appeal.

43. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's level two appeal.

44. As a result, Plaintiff was forced to pay for D.G.'s care and treatment at La Europa from his own personal funds.

45. Plaintiff has exhausted all administrative remedies regarding the denial of D.G.'s mental health benefits.

**C. Aetna's Wrongful Denials of D.G.'s Treatment at Optimum Performance Institute**

46. Following D.G.'s treatment at La Europa, at the recommendation of her treatment providers, she was admitted to Optimum Performance Institute ("OPI"), a residential treatment center.

47. At all times relevant, D.G.'s treatment at OPI was medically necessary, based upon the reasoned medical opinions of her treaters.

48. At all times relevant, D.G.'s treatment at OPI was a covered benefit under the Plan.

49. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for D.G.'s treatment at OPI.

50. Aetna and/or Aetna's contracted utilization review service provider initially approved Plaintiff's claims for treatment, for approximately seven weeks.

51. Aetna and/or Aetna's contracted utilization review service provider, however, then denied Plaintiff's claims for continued treatment at OPI, claiming it was not medically necessary.

52. Individuals, and particularly adolescents, who reach the point where prior outpatient modalities of therapy no longer work, and who require inpatient treatment at an inpatient, residential, facility, on average require treatment periods of between six months to eighteen months.

53. The required treatment period at a residential treatment facility increases where, as herein, the patient suffers from multiple, co-morbid, mental health conditions.

54. Plaintiff timely appealed Aetna's claim denials.

55. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's appeal.

56. Plaintiff submitted a level two appeal.

57. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's level two appeal.

58. As a result, Plaintiff was forced to pay for D.G.'s care and treatment at OPI from his own personal funds.

59. Plaintiff has exhausted all administrative remedies regarding the denial of D.G.'s mental health benefits.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against AETNA LIFE INSURANCE COMPANY; ARCH CAPITAL SERVICES, INC. WELFARE BENEFITS PLAN; and DOES 1-10 For Plan Benefits, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

60. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

61. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

62. At all relevant times, Plaintiff, and his daughter, D.G. were insured under the health care plan at issue herein. At all relevant times, D.G. met the medical necessity criteria for treatment required under the terms and conditions of the Plan.

63. Defendants wrongfully denied Plaintiff's benefits for treatment in the Following respects, among others:

(a) Failure to authorize and pay for medical services rendered to D.G. as required by the Plan at a time when Defendants knew Plaintiff was entitled to such benefits under the terms of the Plan;

(b) Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's claims for medical benefits;

(c) After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect his claim along with an explanation of why such material is or was necessary;

(d) Failure to properly and adequately investigate the merits of Plaintiff's medical claims and/or provide alternative and medically appropriate courses of treatment;

(e) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1 (h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment;

(f) Failure to thoroughly and independently evaluate both D.G. and her medical records prior to issuing their denials of Plaintiff's claim and his appeal.

64. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

65. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
### (against Defendants AETNA LIFE INSURANCE COMPANY; ARCH CAPITAL SERVICES, INC. WELFARE BENEFITS PLAN; DOES 1-10)

66. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

67. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

68. Plaintiff asserts that a claim for benefits due under the Policy does not provide him with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

69. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

70. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

71. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

72. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

73.     At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

    a.  Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.7272 and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

    b.  Consciously, unreasonably, intentionally, and without justification, basing its denial on a purported Plan exclusion of "wilderness treatment" while no comparable exclusion exists for skilled nursing facilities and other medical and surgical treatment;

    c.  Consciously, unreasonably, intentionally, and without justification, violating 29 C.F.R. § 2560.503-1(f) by failing to provide adverse benefit determinations that are responsive and intelligible to the ordinary reader;

    d.  Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claims, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

    e.  Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claims, and related claims and/or similar claims, for mental health care benefits;

    f.  Consciously, unreasonably, intentionally, and without justification underpaying Plaintiff's claims;

g. Consciously, unreasonably, intentionally, and without justification applying acute criteria to claims for sub-acute treatment;

h. Consciously, unreasonably, intentionally, and without justification limiting coverage for inpatient treatment for periods of time that are far below reasonable standards in the medical community for such treatment;

i. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

j. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

k. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

74. As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

75. Plaintiff further requests judgment permanently enjoining Defendant Aetna from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and costs. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of D.G.'s treatment at BlueFire, La Europa, and OPI. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

# PRAYER FOR RELIEF

## AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the FIRST CAUSE OF ACTION:

76. Declare that Defendants violated the terms of the Plan by failing to provide mental health benefits;

77. Order Defendants to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

78. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

79. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the SECOND CAUSE OF ACTION:

80. Order Defendants cease applying a "Wilderness Treatment" exclusion to evaluate claims involving mental health treatment;

81. Order Defendants cease applying acute criteria to evaluate claims for sub-acute treatment;

82. Order Defendants cease limiting coverage for inpatient treatment for periods of time that fall below reasonable standards in the medical community for such treatment;

83. To the extent the Court remands Plaintiff's claim for benefits to Defendants, Order that Defendants reevaluate Plaintiff's claims in compliance with California's Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, and MHPAEA;

84. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

85. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

86. For surcharge relief;

87. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

88. Provide such other relief as the Court deems equitable and just.

Dated: January 6, 2023                    Respectfully submitted,

**DL LAW GROUP**

By: /s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, STEPHEN G.